**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **BRANDON LOBSTEIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 5:26-cv-00162-H** |
| | § | |
| **WTA CONTROL CONSULTANTS AND SERVICES, INC. D/B/A CCSI, BRAD FISK, Individually, and JENNIFER FISK, Individually** | § § § § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Brandon Lobstein files this First Amended Complaint against Defendants WTA Control Consultants and Services, Inc. d/b/a CCSI, Brad Fisk, and Jennifer Fisk for violations of the Fair Labor Standards Act. He files it as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B), within 21 days after Defendants served their motion under Rule 12(b) (ECF No. 8). For cause of action, he respectfully shows as follows:

**I. NATURE OF SUIT**

1. This is an action for unpaid overtime compensation, liquidated damages, and retaliation damages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").
2. Defendants classified Plaintiff, a hands-on building-automation field technician, as a salaried exempt employee and did not pay him one and one-half times his regular rate for hours worked over 40 in a workweek. In the three years before he filed suit, Plaintiff worked more than 40 hours in at least 120 workweeks.

3. On May 11, 2026, Plaintiff complained in writing to CCSI's owner that CCSI was paying other technicians overtime and had never paid him overtime. Defendants retaliated against him, and on July 20, 2026, he resigned.

## II. PARTIES

4. Plaintiff Brandon Lobstein is an individual residing in Shallowater, Lubbock County, Texas.
5. Defendant WTA Control Consultants and Services, Inc. is a Texas corporation doing business as CCSI, with its principal office at 12402 Slide Rd., Bldg. 4, Suite 406, Lubbock, Texas 79424. CCSI has appeared in this action through counsel.
6. Defendant Brad Fisk is the President and an owner of CCSI. He has appeared in this action through counsel.
7. Defendant Jennifer Fisk is an officer of CCSI and is Mr. Fisk's wife. She has appeared in this action through counsel.
8. At all times relevant to this suit, each Defendant has been an "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d).
9. Mr. Fisk sets employee compensation at CCSI. He makes the final decision on hiring and firing. He supervises and controls employee work schedules and conditions of employment. He directed the pay practices at issue in this suit.
10. Jennifer Fisk administers CCSI's payroll. She approves and implements pay decisions. She controls the handling and retention of employee time records. She also controls employee expense reimbursement.

## III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action arises under the laws of the United States.

12. Venue is proper in this district and division under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in Lubbock County, Texas, which is within the Lubbock Division of the Northern District of Texas, and because Defendants reside in this district.

13. This Court has personal jurisdiction over Defendants because CCSI is a Texas corporation with its principal office in Lubbock, Texas, and Mr. Fisk and Jennifer Fisk reside and do business in Texas.

## IV. COVERAGE UNDER THE FLSA

14. At all times relevant, CCSI has been an "enterprise" within the meaning of 29 U.S.C. § 203(r).

15. CCSI designs, programs, installs, wires, and services building automation and control systems for customers in West Texas and New Mexico. Its customers include hospitals, schools, county jails, and federal facilities, including a United States Postal Service facility in Amarillo, Texas.

16. CCSI has approximately fifteen employees.

17. CCSI's employees, including Plaintiff, handle, install, and service goods and materials that have been moved in or produced for interstate commerce, including Automated Logic controllers, Belimo actuators and valves, thermostats, sensors, wire, and conduit.

18. In each year from 2023 through 2026, upon information and belief, CCSI had an annual gross volume of sales made or business done of not less than $500,000.[1]

[1] The Fifth Circuit has held that a plaintiff may plead the $500,000 threshold on information and belief because business volume is "solely within [the employer's] possession," when other alleged facts make it plausible. *Flores v. Amazing Grace Primary Home Care, L.L.C.*, No. 24-40434, slip op. at 11-12 (5th Cir. Mar. 17, 2025) (per curiam) (unpublished).

19. At all times relevant, CCSI has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

20. At all times relevant, Plaintiff has been an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

21. At all relevant times, Plaintiff was individually engaged in interstate commerce while performing his job duties for Defendants. In his daily work, Plaintiff regularly used instrumentalities of interstate commerce, including telephones, cell phones, electronic mail, the internet, and interstate highways.

## V. FACTUAL ALLEGATIONS

22. Plaintiff worked for CCSI from July 25, 2012 until he resigned on July 20, 2026.

23. Plaintiff's work for CCSI was at all times hands-on field installation and service work: pulling wire, running conduit, installing and replacing controllers, thermostats, actuators, and sensors, working on rooftop units, chillers, and air handlers, and troubleshooting building automation systems at customer sites.

24. Plaintiff performed the same hands-on installation and service work as CCSI's other field technicians.

25. Plaintiff's primary duty was not management of the enterprise or of a customarily recognized department or subdivision.

26. Plaintiff did not customarily and regularly direct the work of two or more full-time employees. He did not have the authority to hire or fire other employees. Defendants did not give particular weight to any suggestions or recommendations he made about hiring, firing, advancement, or promotion.

27. Plaintiff's primary duty was not office or non-manual work directly related to the management or general business operations of CCSI or its customers, and his duties did not include the exercise of discretion and independent judgment with respect to matters of significance.
28. Plaintiff's primary duty was not work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.
29. No FLSA exemption, under 29 U.S.C. § 213 or any other provision, applied to Plaintiff.
30. Defendants paid Plaintiff a salary and classified him as exempt from overtime for his entire tenure.
31. In July 2023, CCSI paid Plaintiff a salary of $3,062.50 twice a month, which is $73,500 a year. By 2026 his salary was $3,750.00 twice a month, which is $90,000 a year.
32. CCSI paid Plaintiff's sick leave and vacation by the hour at a rate equal to his weekly salary divided by 40. For the pay period of June 16 through June 30, 2026, for example, CCSI paid Plaintiff 24 hours of sick pay at $43.27 an hour.
33. Plaintiff regularly worked more than 40 hours a week, and he often worked between 50 and 80 hours a week.
34. From late July through September 2023, while working on CCSI's UMC Health and Wellness project, Plaintiff worked seven days a week, between about 74 and 80 hours each week.
35. From the week ending September 30, 2023, through the week ending July 4, 2026, Plaintiff worked more than 40 hours in 111 workweeks. In those 111 workweeks he worked between 40.33 and 82.08 hours, and an average of 48.58 hours. In 32 of them he worked 50 hours or more.

36. In each of those workweeks, Defendants paid Plaintiff his salary and, at times, a bonus. Defendants never paid Plaintiff an overtime premium for hours worked over 40 in a workweek.

37. Defendants owe Plaintiff, for each workweek in which he worked more than 40 hours, one and one-half times his regular rate for each hour over 40.

38. Defendants did not make, keep, or preserve records of the hours Plaintiff worked, as 29 U.S.C. § 211(c) requires. CCSI's pay records list Plaintiff's salary with no hours.

39. In 2023, Plaintiff submitted timesheets recording his hours on the UMC project to Jennifer Fisk. She declined to accept them. She told Plaintiff that CCSI did not need to track his hours because he was salaried exempt. She then shredded the timesheets. Plaintiff later offered his overtime hours on the Monahans jail project, and Jennifer Fisk again declined to accept them.

40. Defendants paid overtime to other CCSI field technicians who performed the same installation and service work as Plaintiff, including technicians who worked alongside him, while refusing to pay overtime to Plaintiff.

41. On May 11, 2026, at 10:40 a.m., Plaintiff sent Mr. Fisk this text message: "Hey Brad, I didn't get a chance to talk to you before I headed to Andrews this morning. Just wanted to ask about the guys getting paid overtime now. In the 14 years I've been a tech at CCSI, I have never been paid overtime, even with all the umc job crazy long hours I worked & working monahans job crazy long hours…but the guys working on the Andrews job with me are getting overtime? Has something changed with overtime pay and why are some techs getting overtime when others (like me) aren't getting overtime?"

42. At 11:01 a.m. that same morning, twenty-one minutes later, Mr. Fisk called Plaintiff and directed him to take a drug test. CCSI had never required Plaintiff to take a drug test in

fourteen years of employment. The test was processed as a "pre-employment" screen, and the results were negative.

43. After Plaintiff's complaint, Jennifer Fisk continued to accuse him of taking CCSI's parts. On May 13, 2026, two days after his complaint, Jennifer Fisk told two of Plaintiff's coworkers that parts were missing and that Plaintiff was taking them. She told them to check Plaintiff's truck and to make sure that every part that went onto his truck came off it.

44. On May 14, 2026, Plaintiff wrote to Mr. Fisk that Jennifer Fisk was accusing him of taking company parts home, both directly and by asking his coworkers whether he was taking parts and whether he had parts hidden in his truck. From then on, to protect himself, Plaintiff checked out and returned every part to the office each day.

45. In June 2026, Defendants imposed a new requirement that Plaintiff work no more than eight hours a day and 40 hours a week.

46. On June 15, 2026, Mr. Fisk acknowledged to Plaintiff that Plaintiff's role was not exempt from overtime. On June 16, 2026, Plaintiff wrote to Mr. Fisk: "Thank you for clarifying and confirming today that my role is, and has been, non-exempt from overtime."

47. In the same email Plaintiff wrote that he had "previously attempted to submit" overtime hours to Jennifer Fisk "for the UMC project and the Monahans project and she declined to accept" them, and he asked Mr. Fisk, "How would you like to track my hours weekly to ensure that I am paid any overtime that may happen as most of my work takes me out of town?"

48. On June 26, 2026, Defendants presented Plaintiff with an employment agreement bearing an effective date of May 1, 2026, a job description, and a one-page list headed "The Federal Tests are as follows." The agreement described Plaintiff's position as "Project

Coordinator/Technician." The job description, which Defendants had not used before, carried a title Plaintiff had never held, "BAS Project Coordinator/Supervisor," and described a job in which the employee "supervis[es] and direct[s] the work of a group of BAS installation personnel," "gives assignments/instructions to work crews and supervises their work activity," and "[r]ecommends promotion/demotion of subordinates." The "Federal Tests" page stated that Plaintiff "[r]egularly directs one or more full-time employees," "[e]xercises discretion and independent judgment on matters of significance," and "[i]nfluences decisions on hiring and firing." Plaintiff did not have a regular crew, worked alone about 95 percent of the time, and had no authority to hire, fire, promote, or demote anyone. Defendants assembled these documents after Plaintiff's complaint to justify his exemption classification after the fact.

49. The June 26 agreement also contained a noncompete covering a 300-mile radius, a 60-day notice requirement, and other restrictive terms. Plaintiff knows of no other CCSI employee, of approximately fifteen, whom Defendants asked to sign such an agreement. On July 20, 2026, Plaintiff asked Mr. Fisk whether he had ever had any other employee sign an employment agreement. Mr. Fisk claimed that he had, but he refused to say who.

50. On June 26, 2026, Plaintiff asked whether refusing to sign the agreement would cost him his job. Mr. Fisk said no, but then said that he might need to "talk to somebody" if Plaintiff would not sign the agreement.

51. On July 20, 2026, Plaintiff told Mr. Fisk that he would not sign the employment agreement and that he was resigning. He told Mr. Fisk that the agreement contained a nondisclosure provision and a noncompete, both of which Mr. Fisk had told him it would not contain.

52. Twenty-one minutes after Plaintiff's May 11, 2026 complaint, Defendants ordered Plaintiff to take a drug test. In the weeks that followed, Jennifer Fisk made new accusations of theft against Plaintiff, Defendants imposed a new eight-hour limit on Plaintiff's workday, Defendants prepared exemption paperwork after the fact that recited duties Plaintiff's job did not require, and Defendants presented him, alone among their employees, with a backdated agreement containing a 300-mile noncompete. Those acts would dissuade a reasonable worker from making or supporting a complaint about unpaid overtime. They also made Plaintiff's working conditions so intolerable that a reasonable person in his position would have felt compelled to resign. Defendants constructively discharged Plaintiff when he resigned on July 20, 2026.

53. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a). Defendants paid overtime to other technicians performing the same work while classifying Plaintiff as exempt. Jennifer Fisk refused and destroyed Plaintiff's timesheets. She told him CCSI did not need to track his hours. Mr. Fisk acknowledged that Plaintiff's role was not exempt. Defendants created exemption-justifying documents only after Plaintiff complained.

## VI. COUNT ONE: FAILURE TO PAY OVERTIME

54. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

55. Defendants violated 29 U.S.C. §§ 207 and 215(a)(2) by failing to pay Plaintiff overtime compensation at one and one-half times his regular rate for hours worked over 40 in a workweek.

56. Defendants' violations were not in good faith, and Defendants lacked reasonable grounds to believe their pay practices complied with the FLSA. Plaintiff is entitled to recover his unpaid

overtime compensation and an equal amount as liquidated damages under 29 U.S.C. § 216(b).

## VII. COUNT TWO: RETALIATION

57. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

58. Plaintiff engaged in activity protected by the FLSA when he complained in writing to Mr. Fisk on May 11, 2026, that CCSI had never paid him overtime while it paid other technicians overtime, and again when he wrote to Mr. Fisk on June 16, 2026, about his overtime hours and how CCSI would track and pay them.

59. Defendants retaliated against Plaintiff because of his protected activity, in violation of 29 U.S.C. § 215(a)(3), through each of the acts described in this complaint, including his constructive discharge.

60. Under 29 U.S.C. § 216(b), Plaintiff is entitled to such legal and equitable relief as may be appropriate to remedy Defendants' retaliation, including compensatory, punitive, and liquidated damages.

## VIII. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and award him:

a. All unpaid overtime compensation under 29 U.S.C. § 216(b);

b. Liquidated damages in an amount equal to his unpaid overtime compensation;

c. All legal and equitable relief appropriate under 29 U.S.C. § 216(b) for Defendants' violation of 29 U.S.C. § 215(a)(3), including compensatory, punitive, and liquidated damages;

d. Reasonable attorney's fees and costs of court;

e. Pre-judgment and post-judgment interest at the highest rates allowed by law; and

f. All other relief to which Plaintiff is justly entitled.

Respectfully Submitted,

WELMAKER LAW, PLLC
505 E. Magrill
Longview, Texas 75601
Tel: (512) 799-2048

By: */s/ Douglas B. Welmaker*
Douglas B. Welmaker
Texas State Bar No. 00788641
doug@welmakerlaw.com
Attorney-in-Charge

**ATTORNEY FOR PLAINTIFF**
**BRANDON LOBSTEIN**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's First Amended Complaint has been electronically served on all counsel of record via Notice of Electronic Filing on a known Filing User through the CM/ECF system on October 8, 2026.

*/s/ Douglas B. Welmaker*
Douglas B. Welmaker